# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48651-2-II |
| Respondent, | |
| v. | |
| ALLEN CHAGLUAK BAKER, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. – Allen Baker appeals from the judgment and sentence which ordered him to pay legal financial obligations (LFOs) following his conviction for assault in the third degree. He asserts that the trial court failed to adequately inquire about his ability to pay the LFOs before imposing them.[1] Baker also requests that we waive the imposition of appellate costs if the State prevails in this appeal. Because Baker conceded at sentencing that he had the likely future ability to pay the proposed LFOs, the trial court did not err by failing to inquire further about his financial circumstances before imposing discretionary LFOs. Additionally, we refer the matter of appellate costs to a commissioner of this court if the State files a cost bill and if Baker objects to it. We affirm.

---

[1] Baker also asserts that his trial counsel was ineffective for failing to object to imposition of discretionary LFOs and for failing to ensure the trial court conduct a proper colloquy on Baker's ability to pay. Baker merely makes this assertion. He neither argues it nor cites to authority. We do not consider the assertions. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (this court will not consider a challenge unsupported by argument or authority). Although we decline to address Baker's LFO challenge in the context of an ineffective assistance of counsel claim, we exercise out discretion to address the issue under RAP 2.5 as discussed below.

## FACTS

A jury convicted Baker of assault in the third degree. At a subsequent sentencing hearing, the State requested LFOs that included a $500 victim assessment, a $200 criminal filing fee, $1,200 for court appointed defense counsel, $1,000 for jail reimbursement, and a $100 DNA (deoxyribonucleic acid) collection fee. Baker's lawyer told the trial court, "I believe Mr. Baker at this time, of course, is unemployed and receives assistance from the state in the form of food stamps but is potentially employable upon his release." Report of Proceedings (RP) at 118. The following exchange then took place:

> [Trial court]: All right. Mr. Baker, I have two questions to ask you, and the first has to do with your financial situation and your ability to earn a living once you get out of custody.
> Is there anything about you emotionally, physically, mentally, financially, whatever, that would prevent you from being able to pay your financial obligations if I set them at a reasonable rate, say, $25 a month?
> [Baker]: I would say not. I don't believe so, sir.

RP at 118. The trial court did not inquire further about Baker's ability to pay LFOs. It sentenced Baker within the standard range and imposed the State's recommended LFOs, except for the DNA collection fee. Baker appeals from the portion of his sentence imposing discretionary LFOs.

## ANALYSIS

I.   LEGAL FINANCIAL OBLIGATIONS

Baker contends that the trial court erred by failing to make an adequate inquiry of his financial situation before imposing discretionary LFOs. We disagree.[2]

---

[2] As an initial matter, the State contends that Baker has not properly preserved for our review his contention with the imposition of LFOs. Assuming without deciding that Baker failed to preserve his contention with his LFOs, we nonetheless exercise our discretion under RAP 2.5 to address the issue. *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015).

RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

This requirement applies only to the imposition of discretionary LFOs. *State v. Mathers*, 193 Wn. App. 913, 918-24, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016). It is undisputed that the trial court inquired about Baker's ability to pay discretionary LFOs before imposing them. Baker argues, however, that the trial court's inquiry was insufficient under RCW 10.01.160(3) and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

*Blazina* held that RCW 10.01.160(3) requires trial courts to make an individualized inquiry into a defendant's current and likely future ability to pay discretionary LFOs before imposing them. 182 Wn.2d at 837-39. *Blazina* further held that the record must reflect that the trial court made this required inquiry. 182 Wn.2d at 838-39. "[T]he court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838.

Although the issue of what constitutes an adequate inquiry under RCW 10.01.160(3) was not squarely before it, *Blazina* provided guidance to trial courts.

> Within this inquiry, the court must also consider important factors, as amici suggest, such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.
> Courts should also look to the comment in court rule GR 34 for guidance. This rule allows a person to obtain a waiver of filing fees and surcharges on the basis of indigent status, and the comment to the rule lists ways that a person may prove indigent status. GR 34. For example, under the rule, courts must find a person indigent if the person establishes that he or she receives assistance from a

3

> needs-based, means-tested assistance program, such as Social Security or food stamps. *Id.* (comment listing facts that prove indigent status). In addition, courts must find a person indigent if his or her household income falls below 125 percent of the federal poverty guideline. *Id.* Although the ways to establish indigent status remain nonexhaustive, *see id.,* if someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs.

*Blazina*, 182 Wn.2d at 838–39.

Here, the trial court's question to Baker regarding whether he had any emotional, physical, mental, financial, or other reason why he could not pay the proposed discretionary LFOs was clearly designed to determine whether he had the current or likely future ability to pay the LFOs, as required under RCW 10.01.160(3) and *Blazina*. Baker's response to this inquiry was tantamount to a concession that he had the current or likely future ability to pay the discretionary LFOs and, thus, relieved the trial court of any further obligation to inquire about his financial situation before imposing the LFOs. Although a more thorough inquiry may have been preferable notwithstanding Baker's concession, the trial court did not err by failing to do so under these circumstances.

While acknowledging that, on its surface, the trial court's question to Baker would appear to be a sufficient inquiry of his ability to pay discretionary LFOs, the dissent finds reversible error in its failure to disregard Baker's own concession and further scrutinize Baker's financial situation. Although *Blazina* unequivocally places the burden on trial courts to inquire about a defendant's ability to pay LFOs, trial courts are neither required to advocate for a defendant nor produce evidence supporting a position on the defendant's financial situation. 182 Wn.2d at 837-39. To the contrary, a defendant and his or her attorney always retain the responsibility of making arguments and producing evidence supporting them. In holding that the trial court's inquiry was sufficient, we are aware of the significant burden LFOs may place upon defendants such as Baker. *See e.g., Blazina*, 182 Wn.2d at 835-37. However, where a defendant does not merely fail to object

4

to the imposition of discretionary LFOs but instead affirmatively concedes his or her current or likely future ability to pay those LFOs, a trial court does not err by imposing the LFOs absent further inquiry.

Furthermore, where a defendant's concession regarding his or her ability to pay is mistaken, a defendant unable to pay LFOs is not without recourse. RCW 10.01.160(4) provides that a defendant ordered to pay costs may petition the sentencing court at any time for remission of all or part of the amount owing and may be granted relief upon a showing that the amount due will impose a manifest hardship on the defendant or the defendant's immediate family. In addition, interest on LFOs, excluding restitution, may be reduced or waived. RCW 10.82.090(2). Because we hold that the trial court did not err in failing to conduct a more thorough inquiry before imposing discretionary LFOs, we need not address Baker's contention that the $200 criminal filing fee was a discretionary LFO.

## II.    APPELLATE COSTS

Baker argues that, should the State prevail on appeal, we should not require him to pay appellate costs. He opposes appellate costs in light of *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016), asserting that he does not have the ability to pay because he is indigent. A commissioner of this court will consider whether to award appellate costs under RAP 14.2 if the State decides to file a cost bill and if Baker objects to that cost bill.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

I concur:

Lee, J.

BJORGEN, C.J. (dissenting) — The trial judge's inquiry into Allen Baker's ability to pay legal financial obligations (LFOs) was undoubtedly a well-intended attempt to comply with the requirements of *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). Nonetheless, for several reasons the trial judge's inquiry was insufficient under that decision.

In discussing Baker's ability to pay LFOs defense counsel stated, "I believe Mr. Baker at this time, of course, is unemployed and receives assistance from the state in the form of food stamps but is potentially employable upon his release." Report of Proceedings (RP) at 118. The following exchange then took place:

> [Trial court]: All right. Mr. Baker, I have two questions to ask you, and the first has to do with your financial situation and your ability to earn a living once you get out of custody.
> Is there anything about you emotionally, physically, mentally, financially, whatever, that would prevent you from being able to pay your financial obligations if I set them at a reasonable rate, say, $25 a month?
> [Baker]: I would say not. I don't believe so, sir.

RP at 118. The trial court did not inquire further into Baker's ability to pay LFOs.

On its surface, the question, "[i]s there anything about you emotionally, physically, mentally, financially, whatever, that would prevent you from being able to pay" might seem a comprehensive inquiry into the subject. However, the surface sheen of lexical meaning is not always a true guide to the effect of a statement in the real world. Considering the lack of specificity in this inquiry, its shifting of responsibility to the defendant to think of the absent specifics, and its context, the inquiry neither complies with the requirements of *Blazina* nor serves the critical purposes of that decision.

First, *Blazina* categorically states that in this inquiry, "the court must also consider important factors, as amici suggest, such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay." *Blazina*, 182 Wn.2d at

7

838. The trial court here did not inquire into Baker's debts, assets, education, work experience or any other specific characteristic. Instead, by asking whether there was anything "emotionally, physically, mentally, financially, whatever", it effectively placed the burden on Baker to raise the specific features that were the court's responsibility to discuss under *Blazina*.

By itself, this sort of inquiry would be a closer call. Its inadequacy, however, was compounded by asking whether there was anything preventing payment "at a reasonable rate, say, $25 a month." RP at 118. The low rate and the court's characterization of it as reasonable surely inclines one to assent. Our Supreme Court, though, has recognized that on average, a person who pays $25 per month toward their LFOs at the statutory interest rate will owe the state more 10 years after conviction than when the LFOs were initially assessed. *Blazina*, 182 Wn.2d at 836. Thus, the court's characterization of its proposed LFOs as a sort of bargain was inadvertently misleading. It only helped draw Baker to his equivocal assent to an assessment that would assure his debt would increase even if he made every payment.

Finally, in addition to its strong and precise directives, the Supreme Court in *Blazina* held also that if "someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs." *Blazina*, 182 Wn.2d at 839. Baker was indigent under GR 34. Clerk's Papers at 44. However, instead of respecting the admonition of GR 34, the court's inquiry failed to ask about the specific features required by *Blazina*, improperly shifted the responsibility to Baker to raise them, and drew Baker to assent to payments that would only increase his debt if he made them. In no manner can this be deemed serious questioning of Baker's ability to pay.

The court's inquiry resulted in an unemployed homeless man on public assistance facing LFOs at a rate that likely assures his obligation will increase even if he makes every payment.

No inquiry was made into Baker's debts, assets, education or other features to determine if he could avoid this guaranteed delinquency by making greater payments. Nor was any inquiry made into these specifics to determine if he could even make the minimal payment imposed. This cursory inquiry is inconsistent with the directives of *Blazina* and works directly against its vital purposes. This case should be remanded to the trial court with instructions to inquire into Baker's ability to pay discretionary LFOs in a manner that fully honors *Blazina*.

BJORGEN, C.J.